UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NUMBER 5:24-CV-124-LLK

MARCIA H.                                                                                                    PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security                                                              DEFENDANT

MEMORANDUM OPINION AND ORDER

Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Final Decision of the Commissioner denying her claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. [DN 1]. Plaintiff's Brief/Fact and Law Summary are found at DN 12, the Commissioner's Fact and Law Summary is DN 14, and Plaintiff's Reply is DN 15. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for the Sixth Circuit. [DN 6]. The matter is now ripe for adjudication.

After examining the administrative record, the arguments of the parties, and the applicable authorities, Plaintiff's case will be REMANDED to the Commissioner for further proceedings.

I. BACKGROUND

**Administrative History**. This case is before the Court for review following denial of benefits by the ALJ following rehearing upon remand by the Appeals Council. Plaintiff initially filed her Title II DIB application on May 2, 2019, alleging disability beginning on July 29, 2016, as a result of osteoarthritis throughout her body and gout in her feet [DN 5] at 175. She was 61 years old at the time of filing. Plaintiff has an associates degree in applied science, which was training for medical billing. [DN 5] at 92. She last worked as a factory worker at Remington until

the plant closed, and later attempted (unsuccessfully) to work at Mayfield Consumer Products. *Id*. Her claim was denied initially on September 4, 2019 [DN 5] at 168, and upon reconsideration on June 21, 2020 [DN 5] at 175. Plaintiff timely requested a hearing before an ALJ, which was granted. ALJ Stacey Foster conducted two hearings by telephone on February 1, 2021, and on April 20, 2021. Plaintiff was represented by attorney Donna Thornton-Green at both. Impartial vocational experts testified at the hearings: Lavonne Brent at the February 2021 hearing, and Daniel Myers at the April 2021 hearing. On June 21, 2021, the ALJ issued her unfavorable Decision finding Plaintiff not disabled. [DN 5] at 139-152. Due to the ALJ's use of an incorrect evaluation period in that unfavorable Decision, the Appeals Council remanded the case on July 25, 2022.

On remand, ALJ Foster held a third hearing on November 17, 2022. [DN 5] at 48. Plaintiff was represented at the hearing by attorney Millicent Green Polivick. Impartial vocational expert Betty Hale testified at the hearing. On June 21, 2023, the ALJ issued a second unfavorable Decision [DN 5] at 23-39, finding Plaintiff not disabled. Plaintiff timely requested review of the ALJ's June 21, 2023, unfavorable Decision by the Appeals Council; on May 9, 2024, the Appeals Council denied Plaintiff's request for review. [DN 5] at 7. As a result of the Appeals Council denial, the ALJ's Decision became the Final Decision of the Commissioner and subject to judicial review in this Court. 42 U.S.C. §§ 405(g) and (h); 20 C.F.R. § 422.210(a).

**The ALJ's Decision**. The ALJ's June 21, 2023, Decision denying Plaintiff's claim for DIB was based upon the five-step sequential evaluation process which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2022, and that she has not engaged in substantial gainful activity during

2

the period from her alleged onset date of July 29, 2016, through her date last insured of June 30, 2022 (20 CFR 404.1571 *et seq*.). [DN 5] at 26.

Second, the ALJ found that Plaintiff, through the date last insured, had the following severe impairments: degenerative disc disease, osteoarthritis, peripheral neuropathy, restrictive lung disease, and fibromyalgia (20 CFR 404.1520(c)). *Id*.

Third, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity ("RFC"), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c). In making an RFC determination, the ALJ considers the record in its entirety. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). The ALJ found that, through the date last insured and notwithstanding her impairments, Plaintiff could perform sedentary work:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) (*i.e., lifting, and/or carrying 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking (with normal breaks) for a total of about 2 hours in an 8-hour workday, sitting (with normal breaks) for a total of about 6 hours in an 8-hour workday, and pushing and/or pulling consistent with lifting and/or carrying*) except, she could occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. She could occasionally stoop, kneel, crouch and crawl. She had to avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases, and poor ventilation. She required the use of a cane for ambulation.

[DN 5] at 29.

Fourth, the ALJ found that Plaintiff, through her date last insured, was capable of performing past relevant work as a secretary. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from July 29, 2016, through June 30, 2022, her date last insured. [DN 5] at 39.

## II.  LAW & ANALYSIS

**Standard of review**. This Court's task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*.

Because Plaintiff filed her DIB claim in May of 2019, the new rules for weighing medical opinions apply. See 20 C.F.R. § 404.1520c ("For claims filed … on or after March 27, 2017, the rules in this section apply.") Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source. 20 C.F.R. § 404.1520c(a). Instead, in determining the persuasiveness of a medical opinion, an ALJ is to consider "supportability, consistency,

4

relationship [with the claimant], specialization, and other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). However, the ALJ need only explain how s/he considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 1520c(b)(2). Without the treating physician rule, the applicable regulations allow the ALJ "to evaluate the persuasiveness of submitted medical opinions, with particular focus on their supportability and consistency." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645 at *6 (6th Cir. June 12, 2024).

**Relief sought by Plaintiff**. Plaintiff's Fact and Law Summary indicates that she "specifically disputes findings numbered 3, 5, 6, and 7, conceding the remainder." [DN 12] at 1. Finding 3 is the ALJ's Step Two findings of Plaintiff's severe medically determinable impairments; Finding 5 is the ALJ's RFC finding; Finding 6 is the ALJ's Step Four determination that Plaintiff remains capable of performing her past relevant work as a secretary; and Finding 7 states Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 29, 2016, the alleged onset date, through June 30, 2022, the date last insured (20 CFR 404.1520(f))."

Plaintiff's Fact and Law Summary makes essentially two arguments. First, she posits that applying the new Social Security regulatory definition of "Past Relevant Work" and Plaintiff's age of 59 years at her alleged onset date would make her an automatic GRID pay under the Medical-Vocational Guidelines for either light or sedentary work. [DN 12] at 2. Her second argument seeks remand under Sentence Four on the basis that the ALJ's RFC findings are not supported by substantial evidence because the ALJ failed to properly weigh the opinion from Dr. Siva (Plaintiff's treating neurologist for peripheral neuropathy) that she needs to elevate her legs throughout the day. She also argues that the ALJ failed to properly address Plaintiff's need to use both hands to lift items while using a cane in her dominant hand.

In response, the Commissioner urges the Court to reject Plaintiff's argument regarding the new Social Security regulations and policy changes that took effect in June of 2024 (just days after the Appeals Council's May 9, 2024, denial of her request for review). The Commissioner cites to holdings from other circuits on this issue, urging the Court to follow the guidance expressed in a footnote in the new Social Security Ruling 24-2p guidance. [DN 14] at 5-6. Secondly, the Commissioner addresses Plaintiff's merits arguments regarding the ALJ's treatment of neurologist Dr. Siva's restrictions, arguing that the ALJ's rejection of those limitations was supported by substantial evidence and complied with legal standards.

**Social Security Ruling 24-2p**. Plaintiff was found not disabled at Step Four—that is, the ALJ found that she was capable of performing a range of sedentary work (with the use of a cane for ambulation) and could return to her past work as a secretary. [DN 5] at 38. Plaintiff last worked as a secretary from July 2006 to January 2010. [DN 5] at 383-4. Plaintiff argues that the recent change in the regulatory definition of past relevant work from a look-back window of 15 years to only 5 years would negate the ALJ's Step Four finding in her case:

> CHANGE IN PAST RELEVANT WORK DEMANDS A FINDING OF DISABILITY
> At the time of her onset date, [Plaintiff] was 59 years of age. Due to her advanced age, Mrs. Horsley would be a GRID pay under the Medical-Vocational Guidelines at light under Rule 202.06 or sedentary under Rule 201.06 at all times relevant. On June 22, 2024, Social Security implemented a new regulatory definition of Past Relevant Work, reducing the definition to work performed in the past 5 years, rather than 15 years …. For a Title II claim where the individual has already reached Full Retirement Age, the relevant 5 year period ends on the day before attainment of Full Retirement Age. SSR 24-2P. [Plaintiff] reached Full Retirement Age on January 13, 2024. Thus the 5 year period ends on January 12, 2019. [Plaintiff] did not work at all during that 5 year period of time. Thus, the change in the law would result in a finding that she would have no Past Relevant Work. Consequently, the finding that [Plaintiff] has Past Relevant Work as a secretary is no longer supported by the law. The ALJ's finding that [Plaintiff] is limited to a sedentary RFC means she should be found disabled from her onset date due to her advanced age under the Medical Vocational Guidelines.

[DN 12] at 2-3.

The Court does not agree with Plaintiff's contention that SSR 24-2p provides a basis for reversal in this case. SSR 24-2p became effective on June 22, 2024[1] and was not in place at the time of the ALJ's June 21, 2023 Decision. The Commissioner cites to cases from the Ninth and Tenth Circuits where those appellate courts declined to apply SSR 24-2p to cases that were decided before the regulation was revised and became effective. In addition, the Commissioner points out that

> The Sixth Circuit's approach to judicial review of agency decisions is in line with the Ninth and Tenth Circuit decisions addressing the changes at issue here. See, e.g., Pasiak v. Comm'r of Soc. Sec., 800 F. App'x 301, 305 n.3 (6th Cir. 2019) (citing the agency's expectation and explaining that while certain listings were revised after the agency adjudicated plaintiff's claim, the Court "will review the Commissioner's final decision using the Listing that was in effect on April 11, 2016, the time the Commissioner issued the final decision in Pasiak's case") (internal citation omitted); Wilson v. Comm'r of Soc. Sec., 783 F. App'x 489, 495 n.4 (6th Cir. 2019) ("The version of the rules in effect in January 2017, when the ALJ rendered her opinion, applies.")

[DN 14] at 5-6.

In a footnote to SSR 24-2p, the Commissioner explains how it will apply the new rules regarding past relevant work. In describing how the Social Security Administration will apply the new rules, it states

> We will use this SSR beginning on its applicable date. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. *We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.* If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in the decision we make after the court's remand.

Social Security Ruling 24-2p, 89 Fed. Reg. Vol. 89, No. 110, page 48479. (Emphasis added.)

---

[1] Final Rule, *Intermediate Improvement to the Disability Adjudication Process, Including How We Consider Past Work*, 89 Fed. Reg. 27653-01, 2024 WL 1665873 (April 18, 2024). The change went into effect on June 22, 2024. SSR 24-2p, 2024 WL 3291790, at *1 (June 6, 2024).

7

Plaintiff acknowledges the language contained in Footnote 1 of SSR 24-2p but argues that a Social Security Ruling does not have the same effect as a regulation and that this Court is not bound by the Social Security Administration's expectations. [DN 12] at 3. She further suggests that this Court may disregard the footnote as the word "expectation" does not carry the same authority as language like "shall" or "will." [DN 15] at 2. The Commissioner's position is supported by existing Sixth Circuit precedent that indicates that the appellate court will (and that we should) apply the version of the rule that was in effect at the time the Commissioner issued its final decision. While the new SSR 24-2p rules regarding past relevant work does limit the look-back period to five years instead of fifteen, they were not in effect at the time of the unfavorable Decision issued in this case. Accordingly, Plaintiff's argument for a remand for calculation and payment of benefits on the basis of the new rules fails.[2]

**The ALJ's unfavorable Decision and RFC findings**. Plaintiff's second argument asserts that the ALJ erred when assessing her RFC and failed to reconcile Dr. Siva's limiting opinions with those findings. The evidence of record shows that Plaintiff has a work history that includes over seventeen years of factory work at regional employers including Mattel toy manufacturer (1991-2002), Pilgrims' Pride chicken processing plant (2010-2012), and Remington Outdoor gun factory (2012-2016). [DN 5] at 431, 438. Her work history includes a few office/clerical jobs as well, the most relevant (as it falls within the fifteen-year window for purposes of past relevant work) being her work at the Department for Community Services from 2006 to 2010. *Id*.

The ALJ notes that July 29, 2016, is Plaintiff's alleged onset date which also coincides with the date of the Remington plant closure. [DN 5] at 30. Following the plant closure, Plaintiff

---

[2] The Commissioner concedes that should this Court find a decisional error on the part of the ALJ in this case and grant Plaintiff a remand for further consideration, the agency will apply the new rules on remand when it reevaluates her claim. [DN 14] at 6.

8

returned to school and received an Associate's degree in medical billing. *Id*. She attempted to return to factory work in June of 2018 at Mayfield Consumer Products but was unable to do the work. The ALJ noted wages of $2878.96 for that unsuccessful work attempt between June 17 and August 11, 2018. At two of the three hearings in this case, Plaintiff described her physical problems in detail, indicating the conditions that prevent her from working are pain and numbness in her feet and lower legs, painful swollen hands, and back pain. She testified that she has severe pain and neuropathy in her feet and must elevate her feet multiple times throughout the day. She has difficulty using her hands and because of post-surgical shoulder joint pain, she has difficulty lifting even when using both hands.

Medical records indicate that Plaintiff is 5 ft. 2 in. tall and weighs 134 pounds. [DN 5-1] at 5. The ALJ found that she has severe medical impairments of degenerative disc disease, osteoarthritis, peripheral neuropathy, restrictive lung disease, and fibromyalgia. [DN 5] at 26. The medical records show treatment for foot pain in 2015, and treatment with a podiatrist in March of 2016. In May of 2016, she began five months of treatment at IMAC Regeneration Center for her bilateral foot pain, receiving physical therapy and platelet rich plasma injections. Records show mixed results during this period: the first PRP injection initially relieved the pain in the back of her foot but it continued in the ball and toes; later she thought her steel toe boots might be causing her foot pain to flare. Nonetheless, the ALJ surmised that "By all indication, her bilateral foot pain had improved significantly by the time of her alleged onset date. As stated earlier, she testified that she stopped working at her alleged onset date due to the plant closing rather than her impairment." [DN 5] at 31.

According to the ALJ's medical record summary, from 2017-2019, Plaintiff continued to treat with her primary care physician with complains of bilateral feet and lower leg pain, problems

with her hands, and swelling/pain/reduced range of motion in her right shoulder. By 2019, she had an unsteady gait, a diagnosis of gout, and was walking with a cane. In June of 2020, Plaintiff began treatment with neurologist Dr. Siva and reported a history of foot pain since 2015. Dr. Siva ordered an EMG and nerve conduction study that revealed findings consistent with sensory neuropathy in the feet and noted that she has reduced sensation in her feet.

Dr. Siva continued to treat her peripheral neuropathy, and she sought treatment in July 2021 at Paducah Physiatric Partners for neck and back pain. They documented diminished sensation in her bilateral lower extremities. MRIs showed degenerative disc disease with facet and uncovertebral arthropathy, and thoracic spondylosis at T7-T8 with a small central disc herniation. [DN 5] at 34. Based upon the MRIs, Plaintiff was referred to a neurosurgeon who declined surgical intervention but suggested fibromyalgia evaluation. She underwent two months of physical therapy in 2021, followed with neurologist Dr. Siva in March of 2022, and in October of 2022 saw a rheumatologist who diagnosed osteoarthritis and myofascial pain. [DN 5] at 36.

On May 3, 2021, Plaintiff's neurologist Dr. Siva completed an Attending Physician Restrictions assessment wherein he opined that in a workday, she would be able to sit for one hour continuously, but not walk or stand for an hour. He said she could alternate sitting/standing/walking for less than two hours in a workday, and that she would need to rest, recline or lie down to alleviate pain, fatigue or other symptoms frequently throughout the day. He opined that while sitting, her legs should be elevated. He assessed a lift and carry limit of 6-10 pounds, and rare to never reaching/handling/fingering with her arms and hands. He further limited her to rarely/never climbing, balancing, stooping, crouching, kneeling or crawling, and included environmental restrictions regarding heights, humidity and vibration. He anticipated that she would miss four or more days of work on a monthly basis, and that his opinions were based upon diagnosis of pain in

both feet, arthritis, and numbness. If Dr. Siva's restrictions were to be given controlling weight, Plaintiff would be deemed disabled from the sedentary work set forth in the ALJ's RFC findings.

ALJ Foster found, through her date last insured, that Plaintiff's allegations of pain and limitations particularly related to her bilateral foot pain, were consistent with the evidence. However, she did not find the allegations regarding the severity of pain and limitations to be fully consistent with the evidence of record. For a third time, the ALJ stated that Plaintiff stopped working at the time of her alleged onset date because the plant she worked at closed. [DN 5] at 37.

After considering the evidence, the ALJ took issue with Plaintiff's testimony regarding her conditions:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Specifically, it is reasonable that she may have experienced difficulty performing the type of work she was doing at the time of her alleged onset date, which as will be discussed later, was medium in exertional level. However, there is nothing suggesting she was unable to perform a range of sedentary work a described in the above residual functional capacity.

[DN 5] at 31.

In rejecting Dr. Siva's limiting opinions as unpersuasive, the ALJ found it to be unsupported by his findings and "hugely" inconsistent with other evidence of record. [DN 5] at 38. The ALJ and the Commissioner point out that Dr. Siva's upper extremity assessment would indicate Plaintiff is largely unable to use her upper extremities. This upper extremity assessment was rejected by the ALJ as unsupported by his treatment records and by other evidence such as the neurological evaluation.

However, it is the ALJ's rationale for discounting Dr. Siva's lower extremity limitations that this Court finds to be problematic. Specifically, Dr. Siva opined that her legs should be

elevated while sitting. Plaintiff's primary physical complaint throughout the relevant time period was pain and numbness in her feet (and later her lower extremities). While still working at that plant job that required her to wear steel-toed boots, Plaintiff began seeking out treatment for her lower extremity pain from IMAC, her primary care physician, a podiatrist, physical therapists, her neurologist, a group of physiatrists, a neurosurgeon, and a rheumatologist. For the ALJ to have rejected Dr. Siva's assessment as "hugely inconsistent," [DN 5] at 38, the articulated "supportability" and "consistency" rationales for rejecting Dr. Siva's lower extremity limitations are surprisingly vague:

> This opinion is not persuasive. It is not supported by his findings[3] or consistent with other evidence.[4] His assessment is not supported by his physical examination findings, which reveal an antalgic/limping gait[5] at times and hypersensitivity[6] over her feet but no weakness or [sic][7]

[DN 5] at 38.

The remainder of the paragraph rejecting Dr. Siva's findings appears to be addressed at discrediting the supportability and consistency of the upper extremity limitations expressed in his assessment.

The ALJ's Decision discusses elevation of Plaintiff's legs several times: "there is nothing indicating that she was advised to elevate her legs" [DN 5] at 32, and "there was no evidence of any edema or any indication of a need to elevate her feet." [DN 5] at 33. "While she has some edema on a few occasions, there is no evidence of any chronic edema. There was no evidence of any inflammatory arthritis. There is nothing indicating that she would need to elevate her legs while performing a range of work as described in the above residual functional capacity." [DN 5]

---

[3] It is unclear to which of Dr. Siva's findings this refers.
[4] It is unclear to which other evidence this refers.
[5] Antalgic/limping gait would provide support for his lower extremity limitations.
[6] Hypersensitivity would provide support for Dr. Siva's lower extremity limitations.
[7] This is how the ALJ's rationale for rejecting Dr. Siva's lower extremity limitations ends.

12

at 37. Dr. Siva opined that Plaintiff's legs should be elevated while sitting. The ALJ assumes that chronic edema is the only plausible justification for such a restriction.

Under the new regulations that apply to this case, 20 C.F.R. §§ 404.1520c and 416.920c, the ALJ is required to "articulate how [they] considered the medical opinions and prior administrative medical findings" and specifically "explain how [they] considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* This "mandatory articulation requirement" has been said to "serve[ ] the same purposes as the good reasons requirement of the treating physician rule" because "[b]y requiring ALJs to articulate their analysis of the most important factors to consider ... the requirement permits meaningful judicial review" and "ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive." *Lorraine R. v. Comm'r of Soc Sec. Admin.*, No. 3:20-cv-00396, 2022 WL 4232839, *4–*5 (S.D. Ohio Sept. 14, 2022).

Magistrate Judge Lindsay in this district has noted that "[d]istrict courts applying the new regulations both within this circuit and throughout the country consistently apply the articulation requirement literally." *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022), Report and Recommendation adopted, No. 3:20-CV-551-DJH-CHL, 2022 WL 798035 (W.D. Ky. Mar. 15, 2022). The new regulations require the ALJ to "provide a coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), and "clearly explain [their] consideration of the opinion and identify the evidence supporting [their] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020). In other words,

13

the ALJ must "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)). The new regulations establish a minimum level of articulation; an "ALJ's failure … to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [a claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

In the case of *Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp.3d 900 (E. D. Mich. 2002), the court found that the ALJ did not meet the articulation requirement by including an "extensive summarization of the record" elsewhere in the Decision, nor did the ALJ's citation to specific medical source notes that contradicted the treating source assessments. Here, the ALJ's two citations to the medical evidence intended to discredit Dr. Siva's assessment of lower extremity limitations as not supported by the evidence are flawed; in fact, they accomplish the opposite. Because the ALJ did not sufficiently articulate good reasons for rejecting Dr. Siva's lower extremity limitations on the basis of supportability and consistency, this case must be remanded.

Finally, it should be noted that the vocational expert testimony in the three separate hearings in this case is incomprehensible. Three different VEs testified, and not consistently. In the first (February 1, 2021) hearing, Vocational Expert Lavonne Brent testified that all of Plaintiff's past work would be eliminated if she were limited to working at the sedentary exertional level. [DN 5] at 108. In the second hearing on April 20, 2021, Vocational Expert Dr. Daniel Myers was examined about the transferability of skills from Plaintiff's receptionist duties when she worked for the Department for Community-based Services. Dr. Myers could not articulate the

14

differences between a receptionist, secretary, order clerk or administrative clerk for purposes of the hearing:

> Her job was the secretary, so I don't know – Your Honor, I'm just trying to stay in line with what we discussed in here … I have administrative clerk on here, but that job is – your Honor said that that job is no longer needed to be identified today.…

[DN 5] at 79.

Even after three hearings, the undersigned is uncertain whether Plaintiff's past relevant work was that of an administrative assistant (as identified in the first hearing), receptionist, or secretary, or something else entirely. The ALJ's RFC findings concede Plaintiff's need to use a cane. Yet it is unclear how she is meant to use a cane in her dominant hand while performing secretarial duties of standing and filing, light cleaning within the office, and carrying ten pounds in the opposite non-dominant hand as testified to at the third hearing by Vocational Expert Betty Hale (on November 17, 2022). [DN 5] at 66. When asked whether Plaintiff's need to elevate her legs to waist height frequently throughout the day would impact the jobs available, Ms. Hale answered that such a restriction would preclude all competitive work. *Id*.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that this matter should be REMANDED to the Commissioner under Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order. On remand, SSR 24-2p is to be applied.

September 30, 2025

Lanny King, Magistrate Judge
United States District Court